IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

OSLO COLE,

    Plaintiff,

v.   No. 04-2755 B

YOUTH VILLAGES, INCORPORATED,

    Defendant.

_____

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
_____

Plaintiff, Oslo Cole, brought this action against his employer, Youth Villages, Inc., alleging discrimination on the basis of age and race pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq. ("Title VII").  Before the Court is the motion of the Defendant for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For the reasons set forth below, Defendant's motion is GRANTED.

FACTS

The following facts are undisputed unless noted.  Youth Villages is a nonprofit licensed mental health/social services agency that offers assistance to children, and families of children who have been abused, neglected, abandoned, or who have emotional problems.  (Aff. Jody Paine,[1] ("Paine Aff.") ¶ 4.)  Plaintiff, an African-American male over the age of 40, was hired by Youth Villages in 1998 as a Night Teacher Counselor Assistant ("NTCA") at its Dogwood Campus.  (Compl. ¶ 9; Dep. Oslo Cole ("Cole Dep.") at 35.)  In 2000, Cole was promoted to the position of NTCA Assistant Supervisor ("Assistant Supervisor"), the position in which he currently remains.

---

[1] Jody Paine served as the Director of Youth Villages' Dogwood Campus during the period relevant to the instant action.  (Paine Aff. ¶ 2.)

1

(Cole Dep. at 35, 37, 40.)

Youth Villages' Dogwood Campus is a residential treatment program that is organized into eight cottages. (Paine Aff. ¶ 5; Cole Dep. at 41.) The Dogwood Campus has approximately twelve NTCAs who are responsible for watching the children in the particular cottage that they are assigned to during the night. (Cole Dep. at 41, 42.) In addition, there are two Assistant Supervisors who monitor the children in all of the cottages utilizing a video camera system. (Cole Dep. at 42-43.) The Dogwood Campus also has one Night Teacher Counselor Supervisor ("Night Supervisor") who is responsible for overseeing the NTCAs and the Assistant Supervisors in addition to interviewing, hiring, scheduling, making recommendations for promotions, and approving vacation time. (Cole Dep. at 43.) During the period in question, Geneva Turner, an African-American female, was the NTCA Supervisor. (Cole Dep. at 44, 53.) Turner was supervised by the Program Manager, Charles Seaton, an African-American male. (Cole Dep. at 39, 44.)

In February 2003, Jeffrey Edwards, the Supervisor of Cottage 5 at the Dogwood Campus, was called to active military duty. (Paine Aff. ¶ 10.) The Cottage 5 Supervisor position is a daytime position. (Paine Aff. ¶ 7.) As a result of his departure, Youth Villages posted a notice throughout the company of a permanent job opening for Edwards' position.[2] (Paine Aff. ¶ 11.) Cole did not

---

[2] The Court notes that the Plaintiff's responses to the Defendant's Statement of Uncontested Material Facts do not correctly correspond to the Defendant's numbered statements. The Defendant's fact number 20 states that Youth Villages posted a permanent job opening upon the departure of Jeffrey Edwards. (Def.'s Statement Uncontested Mat. Facts ("Def.'s Statement Facts") at fact no. 20.) Plaintiff's answer to fact number 20 relates to Edward's call to military service but does not address the job posting. (Pl.'s Statement Disputed Undisputed Facts ("Pl.'s Statement Facts") at fact no. 20.) However, Plaintiff's fact no. 21 states that

> [t]he Plaintiff disagrees with this statement in that the Plaintiff requested from Defendant documentation, the procedure and the responsible individual who selected Mr. Dowdle to fill Mr. Edward's position. . .

(Pl.'s Statement of Facts at fact no. 21.) While this appears to be responsive to Defendant's fact no. 20, it did not address whether Youth Villages did post the job or whether that posting advertised a temporary or permanent position. As such, the Court concludes that Plaintiff does not dispute this fact.

apply for the opening because it was a daytime position and he had daytime employment with a higher salary than the Cottage Supervisor job provided. (Cole Dep. at 79.) Gardner Dowdle, a Caucasian male, then employed with Youth Villages as a Senior Overnight Teacher/Counselor, applied for and was selected as a Cottage Supervisor.[3] (Paine Aff. ¶ 13; Aff. Brenda E. Jackson[4] ("Jackson Aff.").) In October 2003, Edwards returned to Youth Villages from his military leave. (Paine Aff. ¶ 13.) Pursuant to the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), Youth Villages was required by federal law to place Edwards into the position that he held prior to his military leave, or a position to which he would have been promoted had he not been called for active military service. (Paine Aff. ¶ 14.) Accordingly, Edwards was placed in the position of Cottage 5 Supervisor. At the time Edwards returned, there were no other vacant Cottage Supervisor positions.[5] (Pl.'s Statement Facts at fact no. 36.) At the time Edwards returned, Dowdle requested that he be placed in a position which was less stressful physically that his current position,

---

[3] Plaintiff disputes Dowdle's position before his promotion to Cottage 5 Supervisor and submits that such information is the subject of a pending motion to compel, however, he does not reference which interrogatory or request for discovery encompassed his request. In any event, Plaintiff's motion to compel has been resolved by this Court. (See Order Granting in Part and Denying in Part Plaintiff's Motion to Compel, entered April 28, 2006; see also Order on Appeal and Affirming in Part Magistrate Judge's Order Granting in Part Plaintiff's Motion to Compel, entered June 15, 2006.) Plaintiff has not submitted any further evidence evidencing an objection regarding Dowdle's position prior to his promotion. As such, the Court concludes that this fact is no longer disputed. See Bell v. Ohio State Univ., 351 F.3d 240, 253 (6th Cir.2003) ("[T]his circuit has long held that mere conclusory and unsupported allegations, rooted in speculation, do not meet [the] burden" of demonstrating that there is a genuine issue for trial.) (internal quotations omitted).

[4] Brenda E. Jackson is employed by Youth Villages as an Assistant Supervisor. (Jackson Aff. ¶ 7.)

[5] Plaintiff maintains, however, that there was a vacant "Night Supervisor Position" at the time Dowdle was displaced. (Pl.'s Statement Facts at fact no. 26.) In support, he cites to Exhibit 9 of his deposition which he claims was a job vacancy posting. (Pl.'s Statement Facts at fact no. 26.) However, the cited exhibit was not included with the materials submitted in response to the instant motion. In it's reply, Youth Villages maintains that the posting referenced by the Plaintiff was for an opening at the Center for Intensive Residential Treatment, which was not the same facility or location as the Dogwood campus. (Def.'s Reply Pl.'s Statement Disputed Undisputed Facts ("Def.'s Reply Pl.'s Statement Facts") at fact no. 27.)

3

Cottage Supervisor.[6] (Paine Aff. ¶ 18.) Generally, the night shift is less stressful physically than the day shift.[7] (Paine Aff. ¶ 18.) Rather than demote Dowdle, and in light of his request, Youth Villages maintains that Paine created a new Night Supervisor position to which Dowdle was "laterally" transferred.[8] (Paine Aff. ¶¶ 18-20.)

Youth Villages did not post the position created for Dowdle throughout the company. (Paine Aff. ¶ 20; Aff. Oslo Cole ("Cole Aff.") at 11.) Defendant maintains that, pursuant to the policies in place at the time, it was not required to do so. (Paine Aff. ¶ 21, Ex. A.) Cole, however, maintains that the position should have been posted. (Cole Aff. ¶ 11-13.) At the time the position was created for Dowdle, the 2003 version of Youth Villages' Personnel Policies was in effect.[9] (Cole Dep., Ex. 2.) The 2003 Personnel Policies do not make reference to the posting of job vacancies.[10] (Cole Aff., Ex. 3.) When Dowdle left the employ of Youth Villages, the position he had held was eliminated. (Cole Dep. at 79.)

Cole initiated the instant action on September 23, 2005 alleging that Youth Villages

---

[6] In response to this fact offered by the Defendant, Cole states that "[t]his statement is repetitious and Plaintiff disagrees." (Pl.'s Statement of Fact at fact no. 28.) However, he offers no basis for his disagreement or citation to the record demonstrating that the fact is in dispute.

[7] Plaintiff notes his disagreement with the instant fact without any citation to the record. (Pl.'s Statement of Fact at fact no. 28.)

[8] Cole again notes his disagreement without citation to the record. (Pl.'s Statement of Fact at no. 29.)

[9] Plaintiff takes issue with the fact that the notice provided to employees advising them that updated policies would go into effect in May 2003 included a list of policies which were altered but did not include in that list the section regarding the posting of vacancies even though that policy changed. (Pl.'s Statement Facts at fact no. 33.) However, Cole does not dispute that the 2003 policies were in place in October 2003 nor that the 2003 policies did not contain a section regarding the posting of vacancies.

[10] In contrast, as Cole points out in response to the Defendant's motion, the Personnel Policies in place in 1998 did require that "[a]ll job vacancies [be] posted in a central location at each office at least three days before any applicant, whether internal or external, [was] offered a position." (Cole Aff., Ex. 2 at 180.)

discriminated against him on December 1, 2003,[11] by denying him an opportunity to compete for the Night Supervisor position in which Dowdle, a younger Caucasian male, was placed.

## STANDARD OF REVIEW

Rule 56( c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56©; see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharms., Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S. Ct. at 2552. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S. Ct. at

---

[11] The Court presumes that this is the date on which Dowdle was placed in the Night Supervisor position although neither party has specified any particular occurrence on this date.

2552.  In this circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action."  Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)).  Finally, the "judge may not make credibility determinations or weigh the evidence."  Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

ANALYSIS

### I.  Discrimination Based on Age

The Defendant first asserts that Plaintiff's age discrimination claim pursuant to Title VII must be dismissed because Title VII does not provide a cause of action for that type of claim. (Mem. Support Def.'s Mot. Summ. J. ("Def.'s Mot.") at 4.)  Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(A)(1).  Considering that Cole did not address his age discrimination claim in response to the instant motion, it appears to have been abandoned.  However, in any event, because Title VII does not provide a cause of action for claims of discrimination based on age, the Court GRANTS the Defendant's motion with respect to that contention.  See Cornell v. Principi, No. H-04-2386, 2006 WL 1007528, *3 n.4 (S.D. Tex. April 13, 2006) ("Title VII does not . . . prohibit age discrimination . . . .").

### II. Discrimination Based on Race

In order to prove a violation of Title VII, a plaintiff must present either direct or circumstantial evidence of discrimination that would permit an inference of discriminatory treatment.  See Johnson v. Kroger Co., 319 F.3d 858, 864-65 (6th Cir.2003).  Where, as here, the Plaintiff has not presented direct proof of discrimination, he may withstand a motion for summary judgment by presenting circumstantial evidence utilizing the well-established evidentiary framework

set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981), from which a jury could draw an inference of discriminatory motive. See Amini v. Oberlin College, 440 F.3d 350, 358 (6th Cir. 2006).

Under the McDonnell Douglas paradigm, a plaintiff may create an inference of racial discrimination by initially establishing a prima facie case. Once the plaintiff has established a prima facie case of discrimination, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for its actions. McDonnell Douglas Corp., 411 U.S. at 802, 93 S. Ct. at 1824. If the employer carries its burden of production, the presumption raised by the plaintiff's prima facie case is rebutted. The plaintiff must then prove, by a preponderance of the evidence, that the employer's stated reasons for the employment action were a pretext for discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 518-19, 113 S. Ct. 2742, 2753-54, 125 L. Ed. 2d 407 (1993). "To survive summary judgment, Plaintiff must produce evidence both that [the Defendant's] rationale is incredible and that the true motivation behind the . . . nonpromotion included intentional discrimination because of his race." Felder v. Nortel Networks Co., No. 05-5250, 2006 WL 1889275, at * 5 (6th Cir. July 10, 2006). The ultimate burden of persuasion remains at all times with the plaintiff. Burdine, 450 U.S. at 253, 101 S.Ct. at 1093.

In this case, Cole alleges that Youth Villages discriminated against him on the basis of race by failing to provide him with an opportunity to compete for the Night Supervisor position in which Dowdle was placed upon Edwards return from military leave. Cole's claim is one for "failure to promote." With respect to the McDonnell Douglas analysis, a plaintiff in a failure to promote case must demonstrate that (1) he is a member of a protected class; (2) he was qualified for the position;(3) he applied for, but did not receive, the position or was not offered the position; and (4) a similarly situated person outside the protected class received the job. Felder, 2006 WL 1889275

at * 5; see also Anthony v. BTR Auto. Sealing Sys., Inc., 339 F.3d 506, 515 (6th Cir. 2003). In support of its motion for summary judgment, Youth Villages maintains that Cole cannot establish a prima facie case of discrimination because Dowdle was not similarly situated to Cole at the time of the creation of the Night Supervisor position. (Def.'s Mot. at 6-7.) Unlike Cole, who was an Assistant Supervisor, Dowdle was a Cottage Supervisor. As such, according to Youth Villages, whereas Cole's placement into the Supervisor position would have been a promotion, Dowdle's placement was merely a lateral transfer. Further, Youth Villages contends that, even if a prima facie case is established, Cole's claim must fail because he has not offered any evidence that the Defendant's proffered reason for Dowdle's placement was a pretext for discrimination. (Def.'s Mot. at 8-9.)

Regardless of whether a prima facie case is established, the Court finds that Cole cannot survive summary judgment because he has failed to set forth any evidence from which a reasonable jury could conclude that the reasons stated by Youth Village's for its employment action was a pretext for discrimination. In order to establish pretext, the Plaintiff must prove "both that the reason was false and that intentional discrimination was the real reason." St. Mary's Honor Center, 509 U.S. at 515, 113 S. Ct. at 2752. Plaintiff offers two arguments in response to the Defendant's motion, neither of which are sufficient to demonstrate pretext. First, Cole asserts that there had been a vacant Night Supervisor position within Youth Villages since 2000 and that, despite his attempts, he was denied the opportunity to investigate and apply for that vacant opening.[12] (Pl.'s Mem. Requesting Mot. Summ. J. Denied ("Pl.'s Resp.") at 1-2.) Specifically, Cole maintains, through the affidavit of Brenda E. Jackson, an African-American female employee of Youth Villages, that "the

---

[12] Plaintiff states in his response that this argument is supported by the Affidavit of Brenda E. Jackson, an African-American female employee of Youth Villages, as well as Plaintiff's own deposition testimony. (Pl.'s Mem. Requesting Mot. Summ. J. Denied ("Pl.'s Resp.") at 1-2.) However, Plaintiff provides no citations to the relevant deposition testimony relied upon.

8

protocol for Youth Village[s'] facilities required two (2) Night Supervisors and one Assistant Supervisor. (Jackson Aff. ¶ 10.) However, consistent with the Defendant's assertions that, at the time Dowdle's position was created, the company only employed one Night Supervisor, Jackson testified in her affidavit that when she inquired as to the additional Night Supervisor position, she was informed that Youth Villages "was not going to fill the other Night Supervisor position." (Jackson Aff. ¶ 10.) Despite any alleged protocol, Plaintiff has come forth with no evidence demonstrating that there was in fact a vacant Night Supervisor position which Youth Villages intended to fill. Rather, it appears that the company functioned with one Night Supervisor with the exception of the period in which an additional position was created to rectify Dowdle's displacement because of Edward's return from military leave.

Plaintiff also takes issue with the Defendant's failure to internally post the position in which Dowdle was placed before he was provided the job. While Cole claims that failure to post was a violation of internal policy, the personnel handbook in place in 2003, unlike its 1998 predecessor, did not mandate internal posting of vacancies. (Cole Aff., Ex. 3.) Even if not posting was in violation of internal procedures, the Sixth Circuit has held that the failure to comply with such procedures, standing alone, is insufficient to create a permissible inference of discriminatory intent. Felder, 2006 WL 1889275, at * 9 (citing Hutson v. Texas State Bd. of Regents, No. 94-6579, 1996 WL 196439, at *1 (6th Cir. April 22, 1996). Further, any such violation would have resulted in the unavailability of the posting to *all* Youth Villages employees, not just those in protected classes. Id. As such, the Court cannot infer discriminatory intent on the part of the Defendant from this omission alone. Because Plaintiff has failed to offer any evidence demonstrating that the reason for Youth Villages' employment action was false or from which a jury could reasonably conclude that intentional discrimination was the real reason for Dowdle's placement, the Defendant's motion for summary judgment is GRANTED.

## CONCLUSION

For the reasons stated herein, the motion of the Defendant for summary judgment is granted.

**IT IS SO ORDERED** this 22nd day of August, 2006.

                    s/  J. DANIEL BREEN
                    UNITED STATES DISTRICT JUDGE